268 So.2d 814

**NATIONAL SECURITY FIRE AND CAS-UALTY COMPANY, a corporation**

v.

**Vincent MAZZARA and Protective Industrial Insurance Co. of Alabama, Inc., a corporation.**

**6 Div. 890.**

Supreme Court of Alabama.
Sept. 28, 1972.

Rehearing Denied Nov. 30, 1972.

Speir & Irons, Birmingham, for Vincent Mazzara.

J. Mason Davis, Birmingham, for appellee Protective Industrial Ins. Co. of Ala., Inc., a Corp.

Joseph S. Mead, Birmingham, for appellant.

544

PER CURIAM.

Mazzara, one of the appellees here, owned a dwelling house in Jefferson County which, in December of 1965, he placed in possession of John and Barbara Hamilton under an agreement of lease-sale which provided that when a total of $6,900.00 was paid to Mazzara at the rate of $60.11 per month, as evidenced by notes, it was to be considered as payment in full for the property and the Hamiltons would be entitled to a warranty deed to the premises. Also in December of 1965, Mazzara and wife executed a promissory note secured by a mortgage on the premises to appellee Protective Industrial Insurance Company of Alabama, Inc., in the amount of $4,700.00. Under an arrangement of all the parties, the monthly installment of $60.11 was collected by a third party and a portion of it paid to Protective Industrial which credited Mazzara's note with it and the balance paid to Mazzara.

Subsequently in 1968, Mazzara insured the premises for $6,000.00 with appellant company against loss by fire with a standard loss payable clause to appellee Protective Industrial. In 1969 the house burned and Mazzara filed with appellant a sworn proof of loss which stated, among other things, that he was the owner and that no other person had any interest or encumbrance thereon except Protective Industrial and that since the policy was issued, there had been no assignment thereof or change of interest, use, occupancy, possession or exposure of the property described.

The matter was placed for adjustment with a firm in Birmingham which made an investigation and reported to appellant,

which, on January 9, 1970, issued its draft in the amount of $6,000.00 payable to Mazzara and Protective Industrial. This draft was endorsed and delivered by Mazzara to Protective Industrial which gave its check in the amount of $6,000.00 to Mazzara for the purpose of rebuilding the premises which was done. There was due Protective Industrial at this time by Mazzara the sum of approximately $3,300.00. Appellant's draft properly endorsed was deposited and presented for payment at a later date in Elba.

After the issuance of the appellant's draft, it was learned by its adjuster in Birmingham that on December 19, 1968, Mazzara and wife had executed and delivered to the Hamiltons a warranty deed covering the property in question and which recited that it was subject to a first mortgage in favor of Protective Industrial. The Hamiltons thereafter gave a second mortgage on the premises to a third party as security for a home improvement loan. When this information was received by appellant from its agent, payment was stopped on its draft of $6,000.00 payable to Mazzara and Protective Industrial.

Appellee Protective Industrial thereafter sued appellant on the law side of the Circuit Court of Jefferson County for the alleged dishonor of the draft on the theory that it was a holder in due course of appellant's draft and appellant then filed a bill on the equity side of said court seeking a declaratory judgment as to the rights and liabilities of all the parties, and in the event that Protective Industrial was declared a holder in due course of the draft, subrogation in the note and mortgage of Mazzara to the rights of Protective Industrial. The matter was tried without a jury and the chancellor held that Protective Industrial was, in fact, a holder in due course of the draft involved; gave judgment against appellant for amount of draft and denied subrogation. This appeal followed.

This court has been greatly aided in its consideration of this case by most able briefs from all parties. Many points of law have been raised, the appellant asserting some nine assignments of error but a careful reading of the entire record and briefs indicates that the two main points to be decided are first, whether or not appellee Protective Industrial is a holder in due course of the dishonored draft of $6,000.00, the exact legal question being whether or not a joint payee of a negotiable instrument can be a holder in due course.

Prior to the enactment of the Uniform Commercial Code, statutory law on this question was silent, but this court in an exhaustive review of authorities both English and American in the case of Ex parte Goldberg & Lewis, 191 Ala. 356, 67 So. 839, concluded that the Uniform Negotiable Instruments Law, then in effect, permitted a payee of a negotiable instrument to whom it was given for value, without notice, and in the ordinary course of business to enforce the obligation against the maker thereof. This holding was subsequently followed in Green v. Martin, 222 Ala. 356, 132 So. 882, and, so far as case law was concerned, prior to the Uniform Commercial Code, was no longer open to dispute.

The rights of the parties to this litigation however must be determined by the provisions of the Uniform Commercial Code which became effective on December 31, 1966, and the question here raised by the pleadings and issues is squarely answered by provisions of the Code. A holder in due course is therein defined as a holder who takes the instrument (a) for value (b) in good faith (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person, and in the next line states that *a payee may be a holder in due course*—Code of Alabama, Title 7A, Sections 3–302(1) and 3–302(2). But it is said that Section 3–116 of the Code prevents a joint payee from being a holder in due course. A careful reading of the cited section draws us to the conclusion that it is intended to make clear the distinction be-

tween instruments payable to disjunctive and conjunctive payees and is not determinative on the question of holder in due course. What we decide is that a joint payee, as here, who in good faith takes an instrument for value, without notice of any dishonor or defense is entitled to enforce the same against the maker thereof. Code of Alabama, Title 7A, Section 3–301. The undisputed evidence in this case is that Mazzara endorsed the draft in question which is regular on its face to Protective Industrial who in reliance of Mazzara's representations that he would rebuild the insured premises and in consideration of the endorsed draft gave to Mazzara its check in the amount of $6,000.00 the proceeds of which were used by Mazzara in his construction business to rebuild the insured premises. The only material evidence in the case concerning notice to Protective Industrial was the recorded deed of Mazzara to the Hamiltons and this was constructive notice and not actual notice required by the Uniform Commercial Code. Code of Alabama, Title 7A, Section 3–304(5). It therefore follows that, under the undisputed evidence, the learned chancellor could have decreed no other way than to say, as he did, that Protective Industrial was a holder in due course and entitled to judgment against the appellant for the amount of the dishonored draft.

## II

Is the appellant entitled to be subrogated to the interest of appellee Protective Industrial in the note and mortgage executed by Mazzara and wife to Protective Industrial?

A provision in the policy is the New York standard mortgage clause which provides that the insurance shall be binding and valid even though the mortgagor has breached certain terms through his acts or neglect, and in at least one case, where the clause was part of the policy, this court recognized the right of the insured to be subrogated to the rights of the mortgagee. Tarrant Land Company v. Palmetto Fire Insurance Co., 220 Ala. 428, 125 So. 807, which is cited in a general review of this entire subject in 5 Ala.L.Rev. 276. Since subrogation has been allowed in the part based on an identical clause, a material inquiry must be made into the acts of the mortgagor Mazzara and the question answered as to whether or not these acts had breached the terms of the policy and thereby worked a forfeiture of the policy as to Mazzara. Put another way, if there had been no mortgagee, could Mazzara have recovered the amount of the policy?

The record is replete with testimony, much of which is in conflict, concerning the transaction in which Mazzara gave the warranty deed to the Hamiltons for the ostensible purpose of securing financing for a home improvement loan, and execution of the proof of loss to appellant. No useful purpose would be served in setting out this testimony in detail or of commenting thereon beyond the fact that the chancellor heard the testimony ore tenus and notwithstanding the view this court might take of the same evidence and any conclusions it might draw therefrom, the chancellor's findings are not due to be rejected out of hand but are due to be affirmed unless they are plainly and palpably wrong. Lott v. Keith, 286 Ala. 431, 241 So.2d 104; Brantley v. Hall, 286 Ala. 400, 240 So.2d 364; Wolfe v. Thompson, 285 Ala. 745, 235 So.2d 878; Sims v. Reinert, 285 Ala. 658, 235 So.2d 802.

In summary, it might be noted that the historical office of subrogation is one in which one creditor is substituted for another. The principle in matters of insurance appears to find its most frequent application in situations described as when an insurer pays to the insured the amount of loss, it is subrogated, in a corresponding amount, to the insured's right of action against any other person *responsible* for the loss. Continental Insurance Company of New York v. Rotholz, 222 Ala. 574, 133 So. 587. And it needs to be added that subrogation is not a matter of absolute

right but may be applied only by the court in the interests of justice and each case must stand or fall on its own facts. Alabama Farm Bureau Mutual Insurance Service, Inc. v. Nixon, 268 Ala. 271, 105 So.2d 643. To allow subrogation in this case would be inequitable and the chancellor in the judgment of this court correctly applied the law to the facts as determined by him.

It follows that the decree of the lower court is due to be and is hereby affirmed.

This opinion was prepared by Circuit Judge Robert E. L. Key and adopted by this court as its opinion.

Affirmed.

HEFLIN, C. J., and MERRILL, COLEMAN, HARWOOD, BLOODWORTH, MADDOX, McCALL and SOMERVILLE, JJ., concur.