BEATTY, Justice.
This is an appeal under a Rule 54(b) certification from an order dismissing a counterclaim for damages and attorney’s fees. We reverse and remand.
Kenneth Lebel purchased a business property, Ken’s General Store located at Theodore, from Norman Smith. Smith retained a real estate mortgage on the property. Lebel procured casualty insurance aggregating $30,000 coverage on the property and contents from Aetna Insurance Company, this policy providing that Smith, the mortgagee, would be a loss payee.
The property was damaged in September 1979 by Hurricane Frederic. Lebel made a claim for $8,304.12 on the policy and in due course Aetna issued a draft to Lebel in that amount. Smith was not named as a payee contrary to the policy provisions. Apparently not all of the funds paid by Aetna were applied to the repair of the property and a dispute arose between Lebel and Smith concerning the condition of the restored property. Ultimately Aetna filed a petition for a declaratory judgment and other (equitable) relief, including restitution, against Lebel, Smith and fictitious parties claiming interests in the property.
*12 Smith’s answer contained, inter alia, a counterclaim against Aetna alleging that Aetna’s payment draft had contravened the terms of the policy by not naming Smith as a loss payee and that Lebel had not used the proceeds of that draft for repairs to the insured building. Smith also claimed $2,000.00 as a reasonable attorney’s fee in the rendition of his services to Lebel.
Aetna moved to dismiss Smith’s counterclaim against it on the grounds that:
1. The counterclaim failed to state a claim upon which relief might be granted; and
2. The counterclaim failed to allege that the mortgage payments owed by Lebel to Smith were in default, and failed to allege that Smith’s collateral had been impaired as a result of the breaches by Aetna and Le-bel. This motion was granted by the trial court which dismissed Smith’s counterclaim against Aetna.
The principal issue before us is whether Smith’s counterclaim states a claim upon which relief may be granted. Stated in another way, under Smith’s allegations could he prove any set of facts which would entitle him to relief?
Neither of Aetna’s arguments is tenable here. Although we have not been furnished a copy of the loss payable clause itself, we may presume for the purposes of this decision that the terms of the commonly used New York Standard Mortgage Loss Payable clause were present in the policy in question. The pertinent language of that clause recites:
[A] Loss, if any, under this policy, shall be payable to the mortgagee .. . named on the first page of this policy, as interest may appear .... [Nationwide Mut. Fire Ins. Co. v. Wilborn, 291 Ala. 193, 279 So.2d 460 (1973).]
In Wilborn, supra, this Court quoted from Continental Ins. Co. of N.Y. v. Rotholz, 222 Ala. 574, 133 So. 587 (1931) concerning the nature of this loss payable clause:
“... the New York Standard clause operates to create a separate and independent insurance of the mortgagee’s interest in the property, and his acquisition of title to the insured property is generally regarded as an increase of interest rather than a change of ownership.” (Emphasis added)
Thus, as Rotholz pointed out, satisfaction of the mortgage debt before suit itself, by foreclosure or otherwise, did not preclude recovery by the mortgagee under the policy where the loss occurred after satisfaction of the mortgage debt, the loss payable provision having the effect “of transferring the payment of the proceeds in the event of a fire loss to the owner where the mortgagee has foreclosed prior to the loss.” Wilborn, supra 291 Ala. at 197, 279 So.2d 460.
In a situation in which the mortgagee’s interest in the property has not ripened into complete title and where the loss precedes foreclosure, Wilborn, at 198, 279 So.2d 460 recognized that
the mortgagee has an election as to how he may satisfy the mortgage indebtedness by two different means. He may look to the insurance company for payment as mortgagee under the New York Standard [Loss Payable] Mortgage clause and may recover, up to the limits of the policy, the full amount of the mortgage debt at the time of the loss. In this event he would have no additional recourse against the mortgagor for the reason that his debt has been fully satisfied.... [Emphasis added.] [Citing Aetna Ins. Co. v. Baldwin County Building & Loan Assn., 231 Ala. 102, 163 So. 604 (1935).]
In Baldwin, the mortgagee had foreclosed and purchased the insured property after a fire loss, and later sued the insurance carrier whose policy contained the New York Standard clause. It was held in that case that a mortgagee who recovered full satisfaction of his debt after the loss, whether by foreclosure or otherwise, forfeited his right to recover under the insurance policy, but no such forfeiture resulted from satisfaction before the loss. This result was explained in Wilborn at 198, 279 So.2d 460 as follows: “at the time of, and immediately after the fire loss, the plaintiff-mortgagee is the creditor of the owner, the plain *13 tiff-mortgagee having had security for that debt in the form of a mortgage on the property and a claim for the loss on the insurance policy.” Wilborn established this general rule at 291 Ala. 199, 279 So.2d 460:
[T]his loss payee clause affords protection of the mortgagee as his interest may appear before or after foreclosure or other methods of change of ownership or title or other mediums of increased ownership of the mortgage property and the insurance follows the property; the exception to this general rule being that if the mortgage indebtedness is fully satisfied after loss by foreclosure or otherwise, then the insurance company is no longer liable to the mortgagee.
In the case before us we do not have a foreclosure situation or one in which the mortgagee has otherwise obtained the title. There is an allegation in Aetna’s complaint referring to a fictitious party who “proposes” to purchase the property. We do have a situation in which the insurance carrier concedes the existence of the loss payable clause, that a loss occurred, and that it issued a draft for a certain sum of money as settlement of the insured’s claim. Now the insurance carrier insists that further recovery from the company on the part of the loss payee-mortgagee would give him a double recovery because, as the insurer argues, the insured states that all of the damage has been repaired. What this argument overlooks is that the carrier’s payment to the mortgagor, under the terms of the policy, was not payment to the mortgagee as its interest might appear. That interest is yet to be resolved and cannot be resolved by allowing the insurer to avoid its contractual obligation to the mortgagee because of a mistake it made in executing the payment draft.
To Aetna’s argument that the mortgagee’s counterclaim did not allege that the mortgagor’s payments were overdue and that the mortgagee’s collateral had been impaired, it is only necessary to quote the general rule as expressed in 45 C.J.S. Insurance § 919 (1946) at 1026:
The mortgagee’s right to recover under an insurance [policy] covering his interest, or payable to him as his interest may appear, is not reduced or lessened by the fact that he has other security for the payment of the mortgage debt remaining after the destruction of the insured property, or by the fact that the property in its damaged condition is more than sufficient to pay the mortgage debt, or by the fact that the mortgagor has restored the insured property to as good a condition as it was in before the loss.
The result we reach in this case accords with the general principle that under these circumstances the rights of the parties are fixed as of the time of the damage, Pink v. Smith, 281 Mich. 107, 274 N.W. 727 (1937); see also Kintzel v. Wheatland Mut. Ins. Assn., Iowa, 203 N.W.2d 799 (1973). The mortgagee protected by the loss payable clause is not affected by an adjustment of or agreement on the loss between the insured and the insurer without his knowledge or consent. See Annot. 1111 A.L.R. 697. And under the liberalized requirements of notice pleading, Rule 8, ARCP, the mortgagee’s counterclaim against the insurer here was sufficient upon which to proceed under the principles discussed herein.
Because the counterclaimant, Smith, has not raised or argued the issue of attorney’s fees, which he claimed in his counterclaim against Aetna, we need not address that issue.
It follows from what we have stated that the order granting the insurer’s motion to dismiss the mortgagee’s counterclaim must be, and is, reversed and remanded.
REVERSED AND REMANDED.
TORBERT, C. J., and MADDOX, JONES and SHORES, JJ., concur.